37681, 37682. TIDWELL v. CRITZ et al; and vice versa.

GREGORY, Justice.

Tidwell and Critz are medical doctors. Prior to December, 1979, Tidwell worked as an emergency room doctor in Johnson City, Tennessee. Critz is involved in the practice of radiotherapy in Atlanta and Decatur. In November, 1979, Tidwell responded to an advertisement placed in the American Medical Association Journal by Critz for a position as a radiotherapist. Subsequently, the two discussed the possibility of practicing radiotherapy together at Georgia Baptist Hospital in Atlanta and DeKalb General Hospital in Decatur. On December 10, 1979, Tidwell and Critz signed a handwritten document captioned "Agreements." This document provided, in pertinent part, that "beginning February 1, 1979 [sic]," the two would become involved in a "medical association . . . for the practice of radiotherapy in Atlanta, Georgia." Tidwell was to be compensated by 30 percent of the profits while Critz would receive 70 percent until Critz had received $126,000 more than Tidwell; the parties agreed that when this point was reached they would divide the profits equally. The agreement also contained a mutually applicable covenant not to compete "in the practice of medicine, active or inactive, in the State of Ga. [sic] outside of this partnership." The agreement further stated that "this partnership" could not be dissolved for three years. The record indicates that the parties verbally agreed to have an attorney draft a more detailed agreement based on this document.

Tidwell then paid Critz $15,000. Tidwell claims he paid this amount towards purchasing an interest in the partnership. Critz insists that this sum was a "loan" to "induce" Critz to practice radiotherapy with Tidwell.

Shortly after the execution of this document, Tidwell began to work with Critz.

In January 1980, Critz presented Tidwell with a second agreement, prepared by Critz's attorney. This detailed "Employment Agreement" created an employee-employer relationship between the parties and provided that Tidwell would be compensated for his association with Critz in the amount of $1,000 per month, "plus such bonus amounts" as Critz approved. The agreement purported to cover all aspects of the association between the parties, including reimbursements for business expenses, payment of medical malpractice insurance and vacation time. The agreement stated that "[a]t such time as [Tidwell's] compensation pursuant to this Agreement is exceeded by the compensation paid to the highest paid physician employee of [Critz] by $126,000, negotiations

for the purchase by [Tidwell] of an interest in the medical practice covered by this Agreement shall begin." The agreement further provided that either party could terminate the association by giving 30 days notice. Paragraph 8 of the agreement provides in part, "This agreement and [Tidwell's] employment hereunder shall be effective as of January 16, 1980." Paragraph 18 of the agreement states, in part: "This Agreement contains the entire understanding between the parties hereto, and supersedes any previous agreement or understanding between such parties."

Tidwell objected to this agreement, stating that it did not reflect the earlier understanding between the parties. Tidwell claims that Critz told him this second agreement was only "temporary," that it did not contradict their original "partnership" agreement, and that Tidwell would be compensated according to the December, 1979 agreement. Tidwell continued to object to the agreement. He avers that in late March, 1980, when he had still not signed the second agreement, Critz threatened to end his association with Tidwell and to have Tidwell's privileges to practice at Georgia Baptist and DeKalb General revoked if the latter did not sign the agreement.

Subsequently Tidwell signed the second agreement. It is not disputed that he conferred with his attorney prior to signing the document.

In June, 1980, after repeated requests to do so, Critz returned to Tidwell the $15,000 Tidwell had paid to him in December, 1979.

In October, 1980, Critz terminated his association with Tidwell, citing the latter's poor work performance and his inability to cooperate with other hospital employees as reasons for Tidwell's discharge.

Tidwell then filed suit in DeKalb County Superior Court, alleging that the second agreement was invalid as he had signed it under duress and the undue influence of Critz. He claimed that Critz had not compensated him for any of his services between December, 1979 and March, 1980; that he had heavy debts "due in part" to the $15,000 he had paid to Critz; that he could not afford the expense of remaining unemployed while he looked for another job, and that he signed the agreement, "in part" because of this. Tidwell averred that "Critz' threats and actions overcame [his] will," and that "his assurances [to pay Tidwell in accordance with the first agreement] also destroyed [his] free agency regarding the purported employment contract." Tidwell prayed that the second agreement be cancelled, that the partnership created by the first agreement be dissolved, and that an accounting be had in accordance with the terms of the first agreement.

Critz answered, denying all of the above allegations. He then

filed a motion for summary judgment on the grounds that the December, 1979 "memorandum of issues" was superseded by the employment agreement, that a partnership had never existed between the parties and, therefore, Tidwell was not entitled to an accounting. Critz also moved for summary judgment on the issues of duress and undue influence on the ground that Tidwell had freely signed the second agreement after consulting with his attorney.

The trial court granted summary judgment to Critz on the issue of duress, finding that Tidwell's allegations were insufficient, as a matter of law, to constitute duress, but that even if they were sufficient, Tidwell had waived any claim "by acceptance of benefits and performance under" the second contract. The trial court then denied, without discussion, the motion for summary judgment on the question of an accounting.

Tidwell appeals in case no. 37681 the granting of the motion for summary judgment as to his claim of duress. Critz has filed a cross-appeal in case no. 37682, alleging that the trial court erred in not granting his motion for summary judgment in its entirety.

(1) Code Ann. § 20-503 provides: "The free assent of the parties being essential to a valid contract, duress either of imprisonment or by threats or other acts, by which the free will of the party is restrained and his consent induced will render the contract voidable at the instance of the injured party. Legal imprisonment, if not used for illegal purposes, is not duress." "Duress is considered as a species of fraud in which compulsion in some form takes the place of deception in accomplishing an injury, and, like fraud, constitutes a meritorious ground to set aside a contract executed as a result thereof." *King v. Lewis,* 188 Ga. 594, 597 (4 SE2d 464) (1939). "Duress which will avoid a contract must consist of threats of bodily or other harm, or other means amounting to coercion, or tending to coerce the will of another, and actually inducing him to do an act contrary to his free will." *Russell v. McCarty,* 45 Ga. 197, 198 (1872). "The threats must be sufficient to overcome the mind and will of a person of ordinary firmness." *King v. Lewis,* supra, at 597.

Tidwell alleges that each of Critz's threats meets the tests for duress set out above. First, he argues that Critz threatened to end his business association with Tidwell to induce him to sign the March 1980 employment agreement, "contrary to his free will." However, the threat of losing a job or fear of such loss is not duress which will void a contract. *Atlanta Life Ins. Co. v. Mason,* 89 Ga. App. 319, 321 (79 SE2d 352) (1953).

Next, Tidwell avers that Critz knew that he was experiencing financial difficulties and that Tidwell had no other available job opportunities, yet Critz refused from March until June to return

Tidwell's payment of $15,000. Tidwell argues that this failure to act in concert with Critz's threats to have Tidwell's privileges to practice at DeKalb General and Georgia Baptist Hospitals revoked, "overcame" Tidwell's "will to reject the (March 1980) contract." Tidwell insists he "simply had no choice but to sign the second contract." At oral argument counsel for Tidwell stated that Tidwell was forced to sign the contract "out of sheer practicality." In determining that these alleged threats and acts by Critz, even if true, do not amount to a claim for duress which will render the second employment contract voidable, we take into account the fact that Tidwell, a highly educated professional, waited for nearly three months after being presented with the second employment contract before signing it. During this time Tidwell discussed the contract with an attorney of his own choosing. We cannot accept Tidwell's argument that "no amount of consultation with lawyers could alleviate the duress imposed by Critz." See *Yearwood v. Nat. Bank of Athens,* 222 Ga. 709 (152 SE2d 360) (1966); *Swint v. Adams,* 42 Ga. App. 705 (157 SE 249) (1930).

While we are not unsympathetic to Tidwell's difficult bargaining position, we cannot say that Critz's conduct or threats were such to induce Tidwell to act contrary to his free will or to coerce Tidwell "to pursue a different course from that which his own judgment at that time dictated as the best for his own interests." *Candler v. Byfield,* 160 Ga. 732, 738 (129 SE 57) (1925).

One may "not void a contract on grounds of duress merely because he entered into it with reluctance, the contract is very disadvantageous to him, the bargaining power of the parties was unequal or there was some unfairness in the negotiations preceding the agreement." 17 CJS 944, § 168.

Giving Tidwell "the benefit of all reasonable doubts and all favorable inferences that may be drawn from the evidence," we conclude that there is no genuine issue as to any material fact and that Critz is entitled to a judgment on the issue of duress as a matter of law. *Summer-Minter v. Giordano,* 231 Ga. 601, 603 (203 SE2d 173) (1974). The trial court did not err in granting Critz's motion for summary judgment on this issue.

(2) Critz avers that the trial court erred in denying his motion for summary judgment on the issue of an accounting. He argues that the handwritten agreement between the parties, executed on December 10, 1979, was not to become effective until February, 1980;[1]

---

[1] While the record discloses that this agreement was to become effective as of "February 1979", at oral argument Critz stated, without disagreement from Tidwell, that the parties intended for the agreement to take effect in February of 1980.

that while Tidwell waited until late March of 1980 to sign the second employment agreement, the agreement clearly states that it is "effective as of January 16, 1980"; that, therefore, even if the first agreement was valid, it never took effect. Critz further argues that even if Tidwell had signed the second agreement under duress or undue influence, he ratified the contract by accepting benefits under it. Consequently since an employer-employee relationship existed between the parties at all times, Tidwell is not entitled to an accounting under the "partnership" agreement of December 10, 1979.

We note at the outset that Code Ann. § 20-503, supra, does not render an otherwise valid contract made under duress *void*, but merely "voidable at the instance of the injured party." "Where the execution of a contract is procured by duress, the person executing it may, after removal of the duress, waive the duress and ratify the contract." *Monk v. Holden,* 186 Ga. 549, 555 (198 SE 697) (1938); *Augusta Motor Sales Co. v. King,* 36 Ga. App. 541 (137 SE 102) (1926). For example, admission of liability under a contract, after removal of the duress, amounts to a ratification of the contract. *Augusta Motor Sales Co.,* supra. Acquiescence in the contract after removal of the duress and an opportunity is afforded to avoid the contract will, under certain circumstances, amount to a ratification of the contract. See, *Bazemore v. Freeman,* 58 Ga. 276 (1877). The courts of this state have also recognized that accepting and retaining benefits arising from a contract executed under duress after removal of the duress, will result in a ratification of the contract. See, *McClellan v. McClellan,* 135 Ga. 95 (68 SE 1025) (1910); *Swint v. Adams,* 42 Ga. App. 705, supra. It must, however, be shown under each of these circumstances that the party intended to ratify the contract. See generally, Gallon v. Lloyd-Thomas Co., 264 F2d 821 (8th Cir. 1959); 25 AmJur2d 428 et seq.

Once the complaining party is relieved from the operation of the duress he is "in a position either to disaffirm [his contract] or to allow it to stand undisturbed as the free and formal disposition of [his] rights. If [his] choice [is] to disaffirm, it might [be] evidenced by suit timely brought or by any other action disclosing [his] purpose to those who would be affected." Barnette v. Wells Fargo Nevada Nat. Bank, 270 U. S. 438, 444 (46 SC 326, 70 LE 669) (1925).

Although Tidwell contends that he could not have ratified the contract because the duress was never removed, we cannot agree. It is not disputed that Tidwell accepted the return of his $15,000 in June, 1980. Nor does Tidwell allege that Critz, at any time after the execution of the March 1980 agreement, threatened to end their association or to have Tidwell's privileges to practice medicine

revoked if Tidwell did not continue to abide by the agreement. What the record does show is that Tidwell accepted compensation and bonus sums as provided under the second agreement, without apparent complaint, until the termination of his employment in October, 1980 when he filed this lawsuit. Thus while we find that Tidwell was not induced to sign the March 1980 agreement under duress, we conclude that since Tidwell took no action to disaffirm the March 1980 contract until after his employment was terminated, he waived any claim of duress. We further find that Tidwell ratified this agreement by accepting and retaining benefits under it. As the March, 1980 agreement states that it "supersedes any previous agreement" and as it is clear that the parties intended for this agreement to be effective on January 16, 1980, prior to the date when the "partnership" created by the December 10, 1979 agreement was to take effect, we agree with Critz that a partnership never existed between the parties. Therefore, Tidwell is not entitled to an accounting under the "partnership" agreement and the trial court erred in denying Critz's motion for summary judgment on the question of an accounting.

(3) Tidwell also alleged in his complaint that he had signed the March, 1980 contract because of the "undue influence" of Critz. Critz denied the allegation and moved for summary judgment on this issue. Both parties complain that the trial court did not rule on this issue in its order granting partial summary judgment to Critz. "Where one party is under the domination of another, or by virtue of the relation between them is justified in assuming that the other party will not act in a manner inconsistent with his welfare, a transaction induced by unfair persuasion of the latter is induced by undue influence and is voidable." Restatement of Contracts, Vol. II, § 497.

"Undue influence which overturns an otherwise legal contract is the exercise of sufficient control over the person, the validity of whose act is brought in question, to destroy his free agency and constrain him to do what he would not have done if such control had not been exercised." *Burroughs v. Reed,* 150 Ga. 724, 725 (105 SE 290) (1920). To be "undue" the influence must be such to deprive a party "of his free agency by substituting for his will that of another." *Scurry v. Cook,* 206 Ga. 876, 878 (59 SE2d 371) (1950). In determining whether undue influence has been exerted, the courts will closely scrutinize confidential relationships or facts which show that the defendant "created the relationship of dominance" over the plaintiff. *Scurry v. Cook* at 879. However, not all influence can be said to be undue "since a person is not prohibited from exercising proper influence to obtain a benefit to himself." Id. As with contracts made under duress, a contract made under undue influence is not ordinarily void, but

merely voidable, and may be ratified once the undue influence has been removed. 25 AmJur2d 401, § 41.

As noted in Division (2), supra, the trial court correctly found, as a matter of law, that Tidwell waived his claim of duress when he ratified the March 1980 contract by accepting benefits and performing under it. We interpret this ruling to include a finding that Tidwell waived any claim of undue influence when he ratified the agreement.

(4) As a result of our findings in Divisions (2) and (3) of this opinion, we conclude that the trial court erred in not granting Critz's motion for summary judgment in its entirety.

*Judgment affirmed in case no. 37681; reversed in case no. 37682. Jordan, C. J., Hill, P. J., Marshall, and Clarke, JJ., concur. Smith, J. dissents.*

DECIDED SEPTEMBER 23, 1981.

*Davis, Davis & Holland, Jefferson James Davis,* for appellant.
*Jones, Bird & Howell, Kevin E. Grady, John I. Spangler III,* for appellees.