## S04F1512. ALEXANDER v. ALEXANDER.
### (610 SE2d 48)

HINES, Justice.

Jerome Brantley Alexander III appeals from the trial court's entry of a final judgment and decree of divorce ending his marriage to Kimberly J. Alexander, and asserts that the trial court erred in refusing to enforce an antenuptial agreement. Finding no error, we affirm.

On February 14, 1997, the couple became engaged to be married and set a wedding date of February 24, 1997. On February 20, 1997, Mr. Alexander presented Ms. Alexander with an antenuptial agreement, saying that he would not marry her unless she signed it, and that his parents would not allow them to marry without it. Ms. Alexander signed the agreement. No attorney reviewed it for her, and Mr. Alexander informed her that such was unnecessary. They married as scheduled, four days later.

The agreement states that each party waives alimony and any rights in the property of the other spouse. A section headed "Full Disclosure by Parties" states, in toto, that: "Each of the parties has made a full disclosure to the other party of all property owned or otherwise held by each respective party as is showing in Exhibits A and B attached hereto." Nonetheless, no such exhibits were attached. At that time, Mr. Alexander owned a house; he sold it shortly after the marriage and bought another home in which the couple resided. Mr. Alexander also had an investment account worth approximately $40,000; he did not disclose it on any exhibit to the agreement, or otherwise.

In 1998, the couple had a child and Ms. Alexander stayed home to care for her. The antenuptial agreement is silent concerning the possibility of children. After an argument in 1998, Mr. Alexander transferred the title to the house in which the couple lived to his mother.[1]

After Ms. Alexander filed for divorce, Mr. Alexander moved to enforce the agreement. The trial court denied his motion and refused to incorporate the terms of the agreement into the final judgment and decree of divorce. The final judgment and decree made dispositions of

---

[1] This was later found by a jury to be a fraudulent conveyance.

property and alimony which differed from that set forth in the antenuptial agreement.

As a matter of public policy, antenuptial agreements made in contemplation of divorce are not absolutely void in Georgia. *Scherer v. Scherer*, 249 Ga. 635, 640 (2) (292 SE2d 662) (1982). When a trial court in a divorce case is faced with such an agreement,

> the trial judge should employ basically three criteria in determining whether to enforce such an agreement in a particular case: (1) was the agreement obtained through fraud, duress or mistake, or through misrepresentation or nondisclosure of material facts? (2) is the agreement unconscionable? (3) [h]ave the facts and circumstances changed since the agreement was executed, so as to make its enforcement unfair and unreasonable?

Id. at 641 (3). Whether an agreement is enforceable in light of these criteria is a decision made in the trial court's sound discretion. See *Adams v. Adams*, 278 Ga. 521, 522-523 (1) (603 SE2d 273) (2004).

The trial court determined that it would not enforce the agreement, and cited three of the bases set forth in *Scherer,* supra: Ms. Alexander's assent to the agreement was procured by duress; Mr. Alexander failed to disclose the material fact that he owned a $40,000 investment account; and, that facts and circumstances had changed since the agreement was signed, by virtue of the birth of the minor child. Mr. Alexander asserts that the trial court abused its discretion as to each of these grounds. The text of the trial court's order makes it clear that it believed that each of the cited bases gave independent justification for not enforcing the agreement. Accordingly, it is not necessary for this Court to address each of the three grounds that Mr. Alexander advances if any one supports the trial court's decision.

It is undisputed that prior to the marriage, Mr. Alexander owned an investment account worth approximately $40,000, and that he did not disclose this to Ms. Alexander by the method set forth in the antenuptial agreement, or in any fashion. Nonetheless, Mr. Alexander contends that the agreement contained a severability clause, and that under OCGA § 13-1-8 (a), the failure to abide by the portion of the contract concerning the attachment of lists showing property owned or held does not void the entire contract.[2] But in determining whether to enforce an antenuptial agreement, the trial court essentially sits in equity and has discretion to "approve the agreement in

---

[2] He also argues that the knowledge Ms. Alexander had of his assets was sufficiently precise to uphold the agreement.

whole or in part, or refuse to approve it as a whole." *Allen v. Allen*, 260 Ga. 777, 778 (2) (b) (400 SE2d 15) (1991). The trial court was not bound by the language of the agreement as to severability, or even as to method of disclosure set forth therein. The question before the court was whether there was a misrepresentation or nondisclosure of a material fact. The trial court found that there was, noting that Ms. Alexander could not intelligently enter into an antenuptial agreement without knowing the property to which she was waiving any potential interest.

There was no abuse of discretion in denying the motion to enforce the agreement.

*Judgment affirmed. All the Justices concur.*

SEARS, Presiding Justice, concurring.

I concur with the majority's holding that Mr. Alexander's failure to reveal his investment account, despite his claim to have fully disclosed all his assets, rendered his antenuptial agreement with Mrs. Alexander null and void.

I write separately, however, to emphasize that this is the only ground upon which the trial court's decision can be affirmed. I believe the trial court erred by also holding that the antenuptial agreement was void due to duress and a change in circumstances.

> Duress which will avoid a contract must consist of threats of bodily or other harm, or other means amounting to coercion, or tending to coerce the will of another, and actually inducing him to do an act contrary to his free will. . . . The threats must be sufficient to overcome the mind and will of a person of ordinary firmness.[3]

Here, the only threat Mr. Alexander made was to say that unless Mrs. Alexander signed the antenuptial agreement, the marriage could not go forward. As the precedent quoted above makes clear, that singular statement does not rise to the level of duress required to void an otherwise valid contract.

Similarly, the mere fact that a child was born during the course of the marriage does not create a material change in circumstances that authorizes the nullification of an antenuptial agreement. Our Code provides sufficient guidelines to ensure that adequate support is provided for a child whose parents divorce.[4] Such child support issues are wholly separate from the issues that are addressed in standard antenuptial contracts — i.e., the obligations divorcing

---

[3] *Tidwell v. Critz*, 248 Ga. 201, 203 (282 SE2d 104) (1981).

[4] See OCGA § 9-6-1 et seq.

parties will owe to one another after the marriage is dissolved.

I am authorized to state that Justice Carley joins in this concurrence.

DECIDED MARCH 7, 2005 —
RECONSIDERATION DENIED MARCH 28, 2005.

*Hicks, Massey & Gardner, Frederick V. Massey*, for appellant.
*Thomas A. Camp*, for appellee.