In the Supreme Court of Georgia

Decided: November 16, 2015

S15A1334. DODSON v. DODSON.

MELTON, Justice.

We granted an application for interlocutory appeal to determine whether the trial court erred when it denied enforcement of a prenuptial agreement between Ricky Dodson (Husband) and Kelly Dodson (Wife) on the basis that Husband failed to establish that he made a full and fair disclosure of his financial condition. For the reasons set forth below, we affirm.

In relevant part, the record shows that the parties are pursuing a divorce, and Wife filed a motion to deny enforcement of a prenuptial agreement entered into by the parties. After a hearing, the trial court analyzed the prenuptial agreement under the standard set forth in Scherer v. Scherer, 249 Ga. 635 (292 SE2d 662) (1982), and found it to be unenforceable. Scherer holds that

> the trial judge should employ basically three criteria in determining whether to enforce such an agreement in a particular case: (1) was the agreement obtained through fraud, duress or mistake, or through misrepresentation or nondisclosure of material facts? (2) Is the agreement unconscionable? (3) Have the facts and circumstances changed since the agreement was executed, so as to make its enforcement unfair and unreasonable?

(Citation omitted.) Id. at 641 (3). "Whether an agreement is enforceable in light of these criteria is a decision made in the trial court's sound discretion. [Cit.]" Alexander v. Alexander, 279 Ga. 116, 117 (610 SE2d 48) (2005). "Under this standard, we review the trial court's legal holdings de novo, and we uphold the trial court's factual findings as long as they are not clearly erroneous, which means there is some evidence in the record to support them." (Citations omitted.) Lawrence v. Lawrence, 286 Ga. 309, 310 (1) (687 SE2d 421) (2009). "[T]he trial court essentially sits in equity and has discretion to 'approve the agreement in whole or in part, or refuse to approve it as a whole.' [Cit.]" Alexander, supra, 279 Ga. at 117-118.

Although the trial court found that the prenuptial agreement satisfied all other parts of the Scherer test,[1] it found that the agreement was unenforceable due to the nondisclosure of material facts. In doing so, the trial court pointed to a number of factors. First, the trial court noted that, although the prenuptial agreement lists all of Husband's assets, it contains no values for these assets– including the value of Husband's bank accounts and two closely-held businesses owned by him. At the hearing on Wife's motion to deny enforcement, the trial

_____

[1] Wife did not contest these findings.

2

court was presented with evidence regarding the nature and value of these assets, and the trial court made the determination that these values were material facts that were necessary for a full and fair disclosure. See Lawrence, supra, 286 Ga. at 313 (4) (One of the requirements that a party seeking enforcement of a prenuptial ageement must meet in order "[t]o satisfy the first prong of the Scherer test, . . . [is to] show . . . that there was 'a full and fair disclosure of the assets of the parties prior to the execution of the antenuptial agreement'") (citation and punctuation omitted). Second, the trial court determined that Husband did not allow Wife reasonable access to his bank accounts in order to ascertain their value. Specifically, the trial court pointed to evidence that, though Wife volunteered to assist Husband with accounting work related to his businesses, Husband declined Wife's help and failed to disclose the values of the business accounts to Wife. Finally, the trial court found that Wife simply did not have information about or access to Husband's business accounts at any time and that "there was no evidence presented . . . that [Wife] *could* know the value of [Husband's] accounts." (Emphasis supplied.)[2] Based on these findings,

---

[2] This fact distinguishes the present case from Spurlin v. Spurlin, 289 Ga. 818 (716 SE2d 209) (2011), in which a postnuptial agreement was enforced where the evidence showed that the wife had unrestricted access to the financial records of her husband. For similar reasons, it is also distinguishable from

it cannot be said that the trial court abused its discretion in ruling that the prenuptial agreement at issue was unenforceable.

Nonetheless, pursuant to Mallen v. Mallen, 280 Ga. 43 (622 SE2d 812) (2005), Husband argues that the prenuptial agreement is enforceable because Wife had a duty to inquire and investigate with regard to the value of all of his assets, including the bank accounts. This is erroneous as both a matter of fact and law. Factually, the trial court found that Husband did not give Wife reasonable access to his bank accounts, and there are facts of record supporting this conclusion. Legally, we made clear in Blige v. Blige, 283 Ga. 65 (2) (656 SE2d 822) (2008), that, in order to enforce a prenuptial agreement, the spouse seeking enforcement must show that the agreement contained full and fair disclosure of his or her material assets. We further clarified that, in the absence of a full and fair disclosure, the other spouse does not have a general duty to investigate the assets of the other party. Id.

Husband also maintains that the law required only that he list all of his material assets, not that he apprise Wife as to their values. This is an incorrect

Lawrence v. Lawrence, supra, because in that case the wife had garnered years of familiarity with her husband's financial dealings prior to entering into a prenuptial agreement.

and overly narrow interpretation of the law.[3] What is absolutely required by Scherer is a "full and fair disclosure." See Lawrence, supra. As found by the trial court in this case, the disclosure was neither full, because Wife had no real knowledge of the value of Husband's bank accounts, nor fair, because Husband never allowed Wife to have reasonable access to those accounts. As such,

> [t]he evidence supports the trial court's finding that [Husband] failed to make a full and fair disclosure of his assets, income, and liabilities to [Wife] prior to the execution of the antenuptial agreement, and nothing in Mallen or [Wife's] actions or inactions prior to the execution of the antenuptial agreement excuses [Husband's] nondisclosure.

Blige, supra, 283 Ga. at 71-72 (2). Therefore, the trial court did not abuse its discretion by determining that the prenuptial agreement failed the first prong of the Scherer test.

Judgment affirmed. All the Justices concur, except Blackwell, J., who concurs in judgment only.

---

[3] We again note that "attaching to the antenuptial agreement financial statements showing both parties' assets, liabilities, and income, while not necessary, 'is the most effective method of satisfying the statutory [disclosure] obligation in most circumstances,'" Lawrence, supra, 286 Ga. at 313 (4), citing Blige, supra, 283 Ga. at 69 n. 12.

5