**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 8, 2018**

# In the Court of Appeals of Georgia

A18A0343. BRANTLEY v. BRANTLEY.

DILLARD, Chief Judge.

James Robert Brantley, Sr. filed a complaint for divorce from Cyd Oglesby Brantley, and shortly thereafter also filed a motion to enforce an antenuptial agreement, under which the parties waived any right to alimony. Cyd filed responsive pleadings, and, subsequently, the trial court denied Robert's motion. On appeal, Robert contends that the trial court erred in applying an incorrect legal theory that resulted in it ruling that the antenuptial agreement was unenforceable. For the reasons set forth *infra*, we agree. Accordingly, we vacate the trial court's ruling and remand the case for reconsideration consistent with this opinion.

Enforcement of an antenuptial agreement is "a matter of public policy."[1] In determining whether to enforce an antenuptial agreement, the trial court has discretion to "approve the agreement in whole or in part, or refuse to approve it as a whole."[2] Consequently, we evaluate a trial court's ruling regarding the enforceability of an antenuptial agreement under "the familiar abuse of discretion standard of review."[3] And under this standard, we review "the trial court's legal holdings de novo, and we uphold the trial court's factual findings as long as they are not clearly erroneous, which means there is some evidence in the record to support them."[4]

So viewed, the record shows that Robert and Cyd began dating in 1999. They were engaged to be married in 2002, and on December 14, 2002, they jointly purchased a home, which required them to provide their respective financial information for the mortgage loan application. On December 27, 2002, three days

---

[1] *Lawrence v. Lawrence*, 286 Ga. 309, 309 (1) (687 SE2d 421) (2009); *see Langley v. Langley*, 279 Ga. 374, 376 (1) (613 SE2d 614) (2005) (holding that "[t]he enforceability of antenuptial agreements is, of course, a matter of public policy").

[2] *Lawrence*, 286 Ga. at 309 (1) (punctuation omitted).

[3] *Id.* at 310 (1); *accord Blige v. Blige*, 283 Ga. 65, 68 (2) (656 SE2d 822) (2008).

[4] *Lawrence*, 286 Ga. at 310 (1); *accord Dodson v. Dodson*, 298 Ga. 117, 118 (779 SE2d 638) (2015).

before their wedding date, Robert and Cyd executed an antenuptial agreement, which, *inter alia*, provided that, in the event of divorce, both parties waived any claims for alimony. In addition, the agreement referenced attached financial disclosures from both Robert and Cyd and further provided:

> The parties agree and stipulate that each of them has made a full and fair disclosure to the other of his or her current financial worth and income. Further, both parties agree and stipulate that they have reviewed Exhibits "A" and "B" hereto, and, therefore, both parties are fully acquainted with and are aware of the financial circumstances of the other party.

Then, on December 30, 2002, Robert and Cyd were married.

Nearly fourteen years later, on March 14, 2017, Robert filed a complaint for divorce in the Superior Court of Meriwether County, asserting that the marriage was irretrievably broken. And several weeks later, following the filing of Cyd's answer and counterclaim, Robert filed a motion to enforce the antenuptial agreement. Cyd filed an initial response brief, and both parties then exchanged reply briefs on the issue. Ultimately, the trial court denied Robert's motion, ruling that the antenuptial agreement was unenforceable because he failed to provide full disclosure of his income.

Shortly thereafter, Robert obtained a certificate of immediate review and filed an application for interlocutory review, which this Court granted. This appeal follows.

1. Robert contends that the trial court erred in denying his motion to enforce the antenuptial agreement. Specifically, Robert argues that the court applied an erroneous legal theory in ruling that the antenuptial agreement was unenforceable because he did not disclose his income within the four corners of the agreement. We agree.

In *Scherer v. Scherer*,[5] the Supreme Court of Georgia established a three-part test for determining whether an antenuptial agreement is enforceable:[6]

> (1) the antenuptial agreement was not the result of fraud, duress, mistake, misrepresentation, or nondisclosure of material facts; (2) the agreement is not unconscionable; and (3) taking into account all relevant facts and circumstances, including changes beyond the parties' contemplation when the agreement was executed, enforcement of the antenuptial agreement would be neither unfair nor unreasonable.[7]

---

[5] 249 Ga. 635 (292 SE2d 662) (1982).

[6] *See id.* at 641 (3); *Dodson*, 298 Ga. at 118 (noting that *Scherer* established the criteria for determining whether a prenuptial agreement is enforceable under Georgia law).

[7] *Lawrence*, 286 Ga. at 312 (4); *accord Blige*, 283 Ga. at 67 (2).

The first prong of the *Scherer* test, and the only prong at issue here,[8] requires the party seeking enforcement to "show both that there was a full and fair disclosure of the assets of the parties prior to the execution of the antenuptial agreement, and that the party opposing enforcement entered into the agreement freely, voluntarily, and with full understanding of its terms after being offered the opportunity to consult with independent counsel."[9] And Georgia law, like that of virtually every other state, imposes "an affirmative duty of pre-execution disclosure on parties to an antenuptial agreement."[10] Indeed, mutual disclosure of the material facts is "a precondition for entering into an antenuptial agreement that accords with Georgia public policy."[11]

Here, as previously noted, the antenuptial agreement referenced attached financial disclosures from both the husband and wife, which provided information regarding both parties' current financial worth and income. Additionally, in support of his motion to enforce the antenuptial agreement, Robert claims that he disclosed

---

[8] Both parties agree that neither the second nor third part of the *Scherer* test is at issue in this appeal.

[9] *Lawrence*, 286 Ga. at 313 (4) (punctuation omitted); *accord Adams v. Adams*, 278 Ga. 521, 522 (1) (603 SE2d 273) (2004).

[10] *Lawrence*, 286 Ga. at 313 (4); *accord Blige*, 283 Ga. 68 (2).

[11] *Lawrence*, 286 Ga. at 313 (4); *accord Blige*, 283 Ga. 68 (2).

his income on three separate forms that were part of the loan application he and Cyd completed prior to jointly purchasing their home. Robert further contends that he verbally disclosed his income to Cyd prior to their execution of the antenuptial agreement and that she was aware of his financial status given their stays in expensive hotels, meals at expensive restaurants, and his recounting of vacations and hunting trips to Alaska and Hawaii, as well as foreign destinations.

Nevertheless, in denying Robert's motion to enforce the agreement, the trial court refused to consider the foregoing evidence and ruled that "[b]ecause the Antenuptial Agreement purports to waive all claims for alimony, the Court finds that the respective incomes of the parties were material facts that should have been disclosed in the agreement, and that materiality precludes, in this Court's opinion, reliance upon matters outside the four corners of the contract." But in confining its analysis to the text of the agreement, the trial court erred. Our case law is replete with examples in which courts have reviewed evidence beyond the four corners of the antenuptial agreement in order to determine whether there was full and fair disclosure of a party's financial condition prior to the execution of such agreement.[12]

---

[12] *See Sides v. Sides*, 290 Ga. 68, 69 (1) (717 SE2d 472) (2011) (holding that parties' prenuptial agreement was enforceable, even though agreement itself did not require that the actual financial disclosure documents be attached to the agreement,

6

Accordingly, we vacate the trial court's ruling finding the antenuptial agreement

_____

given evidence that parties' attorneys signed certifications indicating that they fully discussed all terms of the agreement with their clients and given that wife was aware of vast disparity between husband's income and her own prior to marriage); *Lawrence*, 286 Ga. at 313-14 (4) (affirming trial court's enforcement of antenuptial agreement in light of the extensive evidence in the record showing wife's familiarity with husband's business dealings and personal financial condition, garnered over the course of a lengthy premarital relationship including over two years of cohabitation); *Dove v. Dove*, 285 Ga. 647, 651 (7) (680 SE2d 839) (2009) (holding that husband's failure to disclose his income when he and wife executed prenuptial agreement did not constitute nondisclosure of material facts so as to render agreement unenforceable, as financial statement that husband provided to wife revealed him to be a wealthy individual with significant income-producing assets, and wife had lived with him for four years before prenuptial agreement was entered); *Mallen v. Mallen*, 280 Ga. 43, 47 (1) (c) (622 SE2d 812) (2005) (holding that the trial court did not abuse its discretion in finding adequate disclosure when parties cohabited for four years, husband's financial statement attached to agreement showed that he was wealthy, and wife was well aware from standard of living they enjoyed prior to marriage that husband received substantial income). *Cf. Dodson*, 298 Ga. at 118-19 (upholding trial court's finding that prenuptial agreement was unenforceable given that although agreement listed husband's assets, it listed no values for same and husband did not allow wife access to bank accounts to ascertain value); *Blige*, 283 Ga. at 68-69 (2) (ruling that the trial court did not abuse its discretion in finding inadequate disclosure when evidence showed couple did not cohabit before marriage and husband hid substantial wealth by living modestly); *Corbett v. Corbett*, 280 Ga. 369, 370 (1) (628 SE2d 585) (2006) ("We find nothing in the parties' standard of living before the marriage which would have put wife on notice that husband failed to disclose material facts so as to render the nondisclosure immaterial.").

7

unenforceable, and remand this case for the court to reconsider its decision after applying the correct legal standard.[13]

2. Robert also contends that the trial court erred in denying his motion to enforce the antenuptial agreement, arguing that the evidence conclusively showed that he did, in fact, fully disclose his financial circumstances. But given our holding in Division 1 *supra*, remanding the case to the trial court for further consideration, we decline to address this claim of error.

*Judgment vacated and case remanded. Doyle, P. J., and Mercier, J., concur.*

---

[13] *See Burke Cty. v. Askin*, 291 Ga. 697, 701 (2) (732 SE2d 416) (2012) ("Inasmuch as the trial court granted relief based upon an incorrect legal standard, the judgment must be vacated and the case remanded for the court to reconsider its decision in light of the applicable legal standard"). *Cf. Smith v. Carter*, 305 Ga. App. 479, 481-82 (2) (699 SE2d 796) (2010) (finding that trial court applied incorrect legal standard in calculating child support and, therefore, remanding case to trial court to reconsider its judgment in light of correct standard).