**THIRD DIVISION**
**DILLARD, C. J.,**
**GOBEIL and HODGES, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 13, 2019**

# In the Court of Appeals of Georgia

A19A0485. LYNCH v. LYNCH.

DILLARD, Chief Judge.

Otis O. Lynch filed a complaint for divorce from Kaihra G. Lynch and a motion to enforce an antenuptial agreement. Kaihra filed responsive pleadings, and, ultimately, the trial court granted Otis's motion and issued a final judgment and decree of divorce, in which it awarded Otis attorney fees under OCGA § 9-15-14. On appeal, Kaihra contends that the trial court erred in enforcing the antenuptial agreement because it failed to disclose material facts and in awarding attorney fees without specifying any sanctionable conduct or determining the reasonableness of such fees. For the reasons set forth *infra*, we affirm the trial court's enforcement of the antenuptial agreement but vacate its award of attorney fees and remand the case for reconsideration consistent with this opinion.

Enforcement of an antenuptial agreement is "a matter of public policy."[1] In determining whether to enforce an antenuptial agreement, the trial court has "discretion to approve the agreement in whole or in part, or refuse to approve it as a whole."[2] Consequently, we evaluate a trial court's ruling regarding the enforceability of an antenuptial agreement under "the familiar abuse of discretion standard of review."[3] And under this standard, we review the trial court's legal holdings *de novo*, and "uphold the trial court's factual findings as long as they are not clearly erroneous, which means there is some evidence in the record to support them."[4]

So viewed, the record shows that Otis owns several moving and storage businesses and that Kaihra was an employee of one of those businesses when they began dating. Approximately two and a half years before they married, Otis and

---

[1] *Lawrence v. Lawrence*, 286 Ga. 309, 309 (1) (687 SE2d 421) (2009); *see Langley v. Langley*, 279 Ga. 374, 376 (1) (613 SE2d 614) (2005) (holding that "[t]he enforceability of antenuptial agreements is, of course, a matter of public policy").

[2] *Lawrence*, 286 Ga. at 309 (1) (punctuation omitted).

[3] *Id.* at 310 (1); *accord Blige v. Blige*, 283 Ga. 65, 68 (2) (656 SE2d 822) (2008).

[4] *Lawrence*, 286 Ga. at 310 (1); *accord Dodson v. Dodson*, 298 Ga. 117, 118 (779 SE2d 638) (2015).

Kaihra moved into the same home, and Kaihra continued working for one of Otis's businesses.

In 2004, the couple made plans to marry in Hawaii. And not long before leaving, Otis provided Kaihra with an antenuptial agreement that he wanted her to execute, advised her to retain legal counsel to review the document, and provided her with funds to retain such counsel. Kaihra retained counsel and provided her attorney with a copy of the antenuptial agreement just prior to her departure for Hawaii in late October 2004. But for some reason, she was not able to thoroughly discuss the agreement with her counsel, and, ultimately, she received no advice as to whether she should execute it. Nevertheless, on October 30, 2004, Kaihra and Otis executed the antenuptial agreement in Hawaii, and two days later, they married.

The antenuptial agreement provided a list of properties and businesses owned by Otis and stated that they would remain separately owned by Otis despite any contributions made by Kaihra during the marriage. The agreement further provided that both parties waived any claims to alimony. In addition, paragraph 11 of the agreement, titled "Full Disclosure," provided that Otis's net worth was between $9,923,400 and $12,128,600 and that his annual income was $210,000. In the same

paragraph, it noted that Kaihra's net worth was between $300,000 and $400,000, and that her annual income was $57,200.

Nearly fifteen years later, on September 12, 2017, Otis filed a complaint for divorce in the Superior Court of DeKalb County, asserting that the marriage was irretrievably broken. And a few weeks later, after Kaihra filed responsive pleadings, Otis filed a motion to enforce the antenuptial agreement, attaching the agreement as an exhibit. Kaihra filed a response, and the trial court held a hearing on the motion, during which both Otis and Kaihra testified. At the conclusion of the hearing, the trial court ruled that the antenuptial agreement was enforceable, and a few weeks later, it issued an order granting Otis's motion, specifically finding, *inter alia*, that the agreement's financial disclosures were sufficient.

A few months later, the trial court conducted a short trial to finalize the parties' divorce, during which Otis argued that he should be awarded $30,000 in attorney fees based on Kaihra's contesting the enforceability of the antenuptial agreement. Finding that the antenuptial agreement was "a pretty sound legal document," the trial court awarded Otis $15,000 in attorney fees. And in its final judgment and decree of divorce, issued on July 3, 2018, the trial court stated that "having reviewed all pleadings, evidence and applicable law, the Court hereby Orders that [Kaihra] pay to

4

[Otis] the amount of $15,000.00 in attorney fees pursuant to OCGA § 9-15-14." This appeal follows.

1. Kaihra contends that the trial court erred in enforcing the antenuptial agreement, arguing that the agreement was unenforceable because it failed to disclose material facts pertaining to Otis's financial status. We disagree.

In *Scherer v. Scherer*,[5] the Supreme Court of Georgia established criteria for determining whether an antenuptial agreement is enforceable,[6] and under that three-part test

> the party seeking enforcement bears the burden of proof to demonstrate that: (1) the antenuptial agreement was not the result of fraud, duress, mistake, misrepresentation, or nondisclosure of material facts; (2) the agreement is not unconscionable; and (3) taking into account all relevant facts and circumstances, including changes beyond the parties' contemplation when the agreement was executed, enforcement of the antenuptial agreement would be neither unfair nor unreasonable.[7]

---

[5] 249 Ga. 635 (292 SE2d 662) (1982).

[6] *See id.* at 641 (3); *Dodson*, 298 Ga. at 118 (noting that *Scherer* established the criteria for determining whether a antenuptial agreement is enforceable under Georgia law).

[7] *Lawrence*, 286 Ga. at 312 (4); *accord Blige*, 283 Ga. at 67 (2).

5

The first prong of the *Scherer* test, and the only prong of the test at issue here,[8] requires the party seeking enforcement to "show both that there was a full and fair disclosure of the assets of the parties prior to the execution of the antenuptial agreement, and that the party opposing enforcement entered into the agreement freely, voluntarily, and with full understanding of its terms after being offered the opportunity to consult with independent counsel."[9] And Georgia law, like that of virtually every other state, "imposes an affirmative duty of pre-execution disclosure on parties to an antenuptial agreement."[10] Indeed, mutual disclosure of the material facts is "a precondition for entering into an antenuptial agreement that accords with Georgia public policy."[11]

Here, the antenuptial agreement provided a list of the several properties and businesses owned by Otis prior to the marriage, an estimation of Otis's net worth, which was between $9,923,400 and $12,128,600, and his annual income at the time

---

[8] Neither party argues on appeal that either the second or the third part of the *Scherer* test is at issue.

[9] *Lawrence*, 286 Ga. at 313 (4) (punctuation omitted); *accord Adams v. Adams*, 278 Ga. 521, 522 (1) (603 SE2d 273) (2004).

[10] *Lawrence*, 286 Ga. at 313 (4); *accord Blige*, 283 Ga. 68 (2).

[11] *Lawrence*, 286 Ga. at 313 (4); *accord Blige*, 283 Ga. 68 (2).

of the marriage, which was $210,000. The agreement did not include an attached financial statement or other formal documentation of Otis's financial status, and as our Supreme Court has noted, "though not required, a fairly simple and effective method of proving disclosure is to attach a net worth schedule of assets, liabilities, and income to the antenuptial agreement itself."[12] Indeed, attaching to the antenuptial agreement financial statements showing both parties' assets, liabilities, and income, while not necessary, is "the most effective method of satisfying the statutory disclosure obligation in most circumstances, thereby deterring protracted and expensive litigation if the antenuptial agreement is later invoked."[13]

But as noted *supra*, we review a trial court's acceptance or rejection of an antenuptial agreement, in whole or in part, for abuse of discretion only, and "the record in this case supports the trial court's determination that there was adequate pre-execution disclosure of [Otis's] financial status."[14] Specifically, during the hearing on the motion to enforce, Otis testified that prior to their marriage, Kaihra

---

[12] *Lawrence*, 286 Ga. at 313 (4) (punctuation omitted); *accord Blige*, 283 Ga. at 69, n.12.

[13] *Lawrence*, 286 Ga. at 313 (4) (citation & punctuation omitted); *accord Blige*, 283 Ga. at 69, n.12.

[14] *Lawrence*, 286 Ga. at 313-14 (4).

worked for one of his businesses, all of which were listed in the agreement, and was privy to the value of those businesses as well as the value of his several properties, which the agreement also listed. Kaihra denied being privy to such information but acknowledged living with Otis prior to their marriage, traveling to Hawaii for their wedding, and that her responsibilities as an employee for one of Otis's businesses included bookkeeping and paying bills and taxes. In ruling to enforce the agreement at the conclusion of the hearing, the trial court stated that it did not find Kaihra's denials credible.[15] And in its order granting Otis's motion to enforce the antenuptial agreement, the trial court found that the agreement contained a full disclosure of both parties' assets and net worth and further found that Kaihra had notice of Otis's financial status based on sharing a home with him prior to their marriage and her employment with one of Otis's businesses. Given these particular circumstances, there was some evidence to support the trial court's ruling, and, thus, we cannot say that the court abused its discretion in concluding that there was full and fair disclosure of Otis's financial condition prior to the parties' execution of the

---

[15] *See Sedehi v. Chamberlin*, 344 Ga. App. 512, 516 (811 SE2d 24) (2018) (noting that "this Court properly gives due deference to the opportunity of the trial court to judge the credibility of the witnesses" (punctuation omitted)).

8

antenuptial agreement.[16] Accordingly, the trial court did not abuse its discretion in concluding that the antenuptial agreement is enforceable.[17]

---

[16] *See Lawrence*, 286 Ga. at 313-14 (4) (affirming trial court's enforcement of antenuptial agreement in light of the extensive evidence in the record showing wife's familiarity with husband's business dealings and personal financial condition, garnered over the course of a lengthy premarital relationship including over two years of cohabitation); *Dove v. Dove*, 285 Ga. 647, 651 (7) (680 SE2d 839) (2009) (holding that husband's failure to disclose his income when he and his wife executed the antenuptial agreement did not constitute non-disclosure of material facts so as to render the agreement unenforceable, as the financial statement that the husband provided to his wife revealed him to be a wealthy individual with significant income-producing assets, and the wife lived with him for four years before the antenuptial agreement was executed); *Mallen v. Mallen*, 280 Ga. 43, 47 (1) (c) (622 SE2d 812) (2005) (holding that the trial court did not abuse its discretion in finding adequate disclosure when the parties cohabited for four years, the husband's financial statement attached to agreement showed that he was wealthy, and the wife was well aware from the standard of living they enjoyed prior to marriage that the husband received substantial income). *Cf. Dodson*, 298 Ga. at 118-19 (upholding trial court's finding that the antenuptial agreement was unenforceable given that although the agreement listed husband's assets, it listed no values for same and the husband did not allow his wife access to the bank accounts to ascertain their values); *Blige*, 283 Ga. at 68-69 (2) (ruling that the trial court did not abuse its discretion in finding inadequate disclosure when evidence showed the couple did not cohabit before marriage and the husband hid substantial wealth by living modestly); *Corbett v. Corbett*, 280 Ga. 369, 370 (1) (628 SE2d 585) (2006) ("We find nothing in the parties' standard of living before the marriage which would have put [w]ife on notice that [h]usband failed to disclose material facts so as to render the nondisclosure immaterial.").

[17] Although there is evidence in the record to support the trial court's ruling in this matter, we caution the court with regard to its comment made during the hearing on the motion to enforce, in which it compared an antenuptial agreement to "notice pleadings," stating that if Kaihra wanted specific values for Otis's properties, she

2. Kaihra also contends that the trial court erred in awarding attorney fees under OCGA § 9-15-14 without specifying any sanctionable conduct or determining the reasonableness of such fees. We agree.

It is well established that a party is entitled to reasonable and necessary attorney fees and expenses of litigation under OCGA § 9-15-14 (a) for "defending a claim with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim."[18] And OCGA § 9-15-14 (b) permits the recovery of costs of litigation upon "a finding that a party brought or defended an action, or any part thereof, that lacked substantial justification or that the action, or any part thereof, was

---

could have "pushed back" and requested such information. The implication in this comment appears to be that Kaihra had a duty to investigate Otis's financial status. But as our Supreme Court has specifically held, "in the absence of a full and fair disclosure, the other spouse does not have a general duty to investigate the assets of the other party." *Dodson*, 298 Ga. at 119; *accord Blige*, 283 Ga. at 65 (2).

[18] *McKemie v. City of Griffin*, 272 Ga. 843, 844 (2) (527 SE2d 66) (2000); *accord Ga. Dep't of Transp. v. Douglas Asphalt Co.*, 295 Ga. App. 421, 423 (1) (671 SE2d 899) (2009) (punctuation omitted).

interposed for delay or harassment, or upon a finding that a party unnecessarily expanded the proceeding."[19] Importantly, when a trial court exercises its discretion in assessing attorney fees and costs of litigation under OCGA § 9-15-14, it is "incumbent upon the court to specify the conduct upon which the award is made."[20] Indeed, a judgment devoid of such findings "*must* be vacated and the case must be remanded for reconsideration."[21] Additionally, an order awarding attorney fees under this statute must "specifically state whether the award is made under OCGA § 9-15-14 (a) or (b)."[22]

Here, although the trial court awarded attorney fees under OCGA § 9-15-14, its mere five-line ruling near the end of the judgment and decree failed to make express findings of fact or conclusions of law as to the basis for such award under that statute. Moreover, the court's ruling fails to specify whether the attorney fees and

---

[19] *Douglas Asphalt Co.*, 295 Ga. App. at 423 (1) (punctuation omitted).

[20] *Id.* at 424 (1) (punctuation omitted).

[21] *Id.* (emphasis in original) (punctuation omitted).

[22] *Id.*; *accord Woods v. Hall*, 315 Ga. App. 93, 97 (2) (726 SE2d 596) (2012).

expenses are awarded to Otis under OCGA § 9-15-14 (a) or (b). In fact, the court's

ruling merely recites that "having reviewed all pleadings, evidence and applicable

law, the Court hereby Orders that [Kaihra] pay to [Otis] the amount of $15,000.00 in

attorney fees pursuant to OCGA § 9-15-14." But this purported finding is "entirely

too vague and conclusory to permit any meaningful appellate review of the award of

attorney fees and expenses of litigation under OCGA § 9-15-14."[23] Furthermore, the

transcripts of the hearing on Otis's motion to enforce the antenuptial agreement and

the divorce trial are similarly devoid of any specific findings of fact or conclusions

of law supporting an award of attorney fees under OCGA § 9-15-14.[24] Indeed, in

awarding attorney fees at the conclusion of the trial, the court perfunctorily stated that

it was doing so because the antenuptial agreement was "a sound legal document" and

made no mention of OCGA § 9-15-14. Accordingly, we vacate the award of attorney

---

[23] *Douglas Asphalt Co.*, 295 Ga. App. at 424 (punctuation omitted).

[24] *See Franklin Credit Mgmt. Corp. v. Friedenberg*, 275 Ga. App. 236, 241 (2) (b) (620 SE2d 463) (2005) (noting that an appellate court may look to transcripts for bench findings of fact and conclusions of law pertaining to award of attorney's fees under OCGA § 9-15-14).

fees to Otis and remand this case for reconsideration of the award and to make express findings of fact and conclusions of law as to the statutory basis for any such award and the conduct which would authorize it.[25]

*Judgment affirmed in part; vacated in part; and case remanded. Gobeil and Hodges, JJ., concur.*

---

[25] *Woods*, 315 Ga. App. at 97-98 (2) (holding that trial court's failure to make express findings of fact or conclusions of law as to the statutory basis for its award of attorney fees required vacating award and remanding to the trial court for further consideration); *Newsome v. Johnson*, 305 Ga. App. 579, 585 (3) (699 SE2d 874) (2010) (holding that trial court erred in awarding attorney fees under OCGA § 9-15-14 without making findings of fact or conclusions of law or specifying applicable statutory subsection and, thus, vacating award and remanding case); *Douglas Asphalt Co.*, 295 Ga. App. at 424-25 (1) (vacating award of attorney fees under OCGA § 9-15-14 because trial court failed to support award with written or oral findings of fact or conclusions of law and failed to even cite which subsection of statute was applicable).