**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY, and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**July 14, 2015**

# In the Court of Appeals of Georgia

A15A0049. KWON et al. v. KWON.

BARNES, Presiding Judge.

Soon Ja Kwon, the widow of Phil Kwon, filed a petition against Mr. Kwon's children and his estate administrator (collectively, "the Administrator") to determine the heirs of the estate, and then filed a motion to deny the enforcement of an antenuptial agreement she signed before she married Mr. Kwon. The Administrator answered and counterclaimed against Mrs. Kwon for conversion of a Rolex watch and for declaratory judgment that the antenuptial agreement was enforceable.[1] The Administrator subsequently moved for summary judgment. The trial court denied the motion for summary judgment and granted the motion to deny enforcement of the agreement, finding that the evidence established that Mrs. Kwon was not fully apprised of Mr. Kwon's assets when she executed the agreement. The Administrator appeals, arguing that the trial court erred in this finding, and erred in failing to find

---

[1]The Administrator initially sought repayment of $15,000 from Mrs. Kwon, but later dropped that claim.

that, even if Mrs. Kwon was not fully apprised of Mr. Kwon's assets when she signed the agreement, she waived her right to further disclosure of his assets. For the reasons that follow, we affirm.

Unlike a motion for summary judgment, in which a trial court is authorized only to determine whether an issue of material fact exists, in a motion to enforce or deny enforcement of an antenuptial agreement, "the trial court essentially sits in equity and has discretion to approve the agreement in whole or in part, or refuse to approve it as a whole." (Citations and punctuation omitted.) *Alexander*, 279 Ga. at 117-118. "On appeal, the trial court's disposition of a motion to enforce a prenuptial agreement is evaluated under the abuse of discretion standard of review." (Citations omitted.) *Quarles v. Quarles*, 285 Ga. 762 (683 SE2d 583) (2009).

So viewed, the evidence showed that the Kwons signed an antenuptial agreement on January 3, 2003, which included alimony provisions in the event of a divorce and provided that if Mr. Kwon died first, Mrs. Kwon would receive $200,000 and half of any life insurance proceeds for which she was a named beneficiary. They obtained a marriage license later that same day, and were married on January 11, 2003. Mr. Kwon was 62, and Mrs. Kwon was 60.

Mr. Kwon died of a stroke on December 20, 2010. He was intestate, and nine days later, the probate court granted letters of administration to Mr. Kwon's son, the Administrator. The Administrator began paying Mrs. Kwon's bills and advancing estate funds to her, but stopped in July 2012 when he located the antenuptial agreement among his father's papers and calculated that he had distributed to Mrs. Kwon all the money she was entitled to receive from the estate. Mrs. Kwon subsequently filed the petition to determine Mr. Kwon's heirs and the motion to deny enforcement of the antenuptial agreement that is the subject of this appeal.

"As a matter of public policy, antenuptial agreements made in contemplation of divorce are not absolutely void in Georgia." (Citation omitted.) *Alexander v. Alexander*, 279 Ga. 116, 117 (610 SE2d 48) (2005). When considering whether an antenuptial agreement is valid,

> the trial judge should employ basically three criteria in determining whether to enforce such an agreement in a particular case: (1) was the agreement obtained through fraud, duress or mistake, or through misrepresentation or nondisclosure of material facts? (2) is the agreement unconscionable? (3) [h]ave the facts and circumstances changed since the agreement was executed, so as to make its enforcement unfair and unreasonable?

*Scherer v. Scherer*, 249 Ga. 635, 641 (3) (292 SE2d 662) (1982).

3

To satisfy the first prong of the *Scherer* test, the party seeking enforcement must show both that there was a full and fair disclosure of the assets of the parties prior to the execution of the antenuptial agreement, and that the party opposing enforcement entered into the antenuptial agreement freely, voluntarily, and with full understanding of its terms after being offered the opportunity to consult with independent counsel. Thus, Georgia law, like that of virtually every other State in the Union, imposes an affirmative duty of disclosure on both parties to an antenuptial agreement.

*Blige v. Blige*, 283 Ga. 65, 68 (2) (656 SE2d 822) (2008) (affirming trial court's denial of motion to enforce antenuptial agreement based on husband's failure to disclose $150,000 in cash).

In the antenuptial agreement, each party covenanted that he or she gave a "substantially accurate" disclosure to the other of all assets and income, that the attached Exhibit A listed all of Mr. Kwon's assets "currently comprising his separate property," that Mrs. Kwon had no property or assets, that each "freely and voluntarily enter[ed] into this agreement with full knowledge of the holdings of the other party and specifically waive[d] and relinquishe[d] any right to obtain any further knowledge" about the holdings, and that the assets owned by each party remained his or her separate estate after marriage. Exhibit A listed four pieces of real property with

4

a fair market value of $4.2 million and mortgages of $2.6 million, two businesses, and "[s]ubstantial cash holdings" used in the businesses as operating capital.

Mrs. Kwon testified that she met Mr. Kwon when her older sister arranged for him to come to California to meet her in May 2002. He was in California for about a week, and in September 2002, Mrs. Kwon moved to Georgia to live with Mr. Kwon, and he gave her $2,000 each month as an allowance. He took her to his lawyer's office on January 3, 2003, gave her a one-page document, and told her she needed to sign it "for marriage verification." She testified that she did not speak or read English, but that she relied on Mr. Kwon's representation that the document was required for the marriage license and did not obtain an interpreter to explain it to her, but simply signed the single page that was presented to her.

Mrs. Kwon further testified that she never saw the first nine pages of the antenuptial agreement and that Mr. Kwon did not explain that she was signing one or talk about how they would divide assets if they got divorced. She said that if he had explained the document to her she would not have married him. He did not tell her what he owned and she signed without knowing what she was signing, she said, because she had been deceived. The lawyer who prepared the agreement was deceased as of the time this proceeding was filed, and the woman who notarized the

5

Kwons' signatures did not remember the transaction. Mrs. Kwon also testified that she had saved $40,000 in cash during her 22 years working at her brother's gas station in California, which she brought to the marriage and subsequently lent to Mr. Kwon to buy cigarettes for one of the gas stations the Kwons leased or bought after they were married, which he never repaid.

The Administrator testified in deposition that some of the assets listed in the antenuptial agreement might be held by FHI Enterprises, LLC, or OHI Enterprises, LLC. Neither company was listed in the agreement, although they both existed before the marriage. When asked to identify more than a dozen accounts Mr. Kwon held at a banking institution when he died, the Administrator did not know which accounts were in Mr. Kwon's name individually and which were in a company name, nor did he know which companies might hold the accounts. He did not know what assets were owned by one of the two limited liability companies that were listed on the antenuptial agreement, either currently or when the Kwons married, nor did he know if a store and a dry cleaning business listed in the agreement were proprietorships or corporations, or whether they were still in operation. The Administrator identified several pieces of real estate and three condominiums Mr. Kwon had purchased with cash after the marriage, but had no inventory of the items he had removed from the

6

Kwons' home after Mr. Kwon died and placed in storage, which included televisions, pictures, computers, stereo equipment, furniture and which was then in storage. The Administrator thought the estate was possibly insolvent, and had hired an appraiser to determine the value of the real estate holdings.

The trial court first found that Mrs. Kwon understood English well enough to have appreciated the import of what she was signing, based on her having lived and held a job in the United States for a long time, and having transacted other business in English. Even if she saw only the signature page, as she asserted, the court held, the language on that page should have put her on notice of its binding effect. Therefore, the court found, Mrs. Kwon had a duty to ascertain the contents of the document. Buckner v. Buckner, 294 Ga. 705, 708 (1) (755 SE2d 722) (2014) (party to contract has duty to read before signing, and, by signing, is bound by its terms, absent showing of fraud, reliance on confidential relationship, or emergency).

The trial court also held that under Georgia law, Mrs. Kwon shared no confidential relationship with Mr. Kwon before they married and therefore was not excused from her duty to read the contract or have it interpreted for her. *Mallen v. Mallen*, 280 Ga. 43, 45 (1) (a) (622 SE2d 812) (2005). Further, being required to sign

the agreement as a condition of marriage did not constitute legal duress under Georgia law. *Hiers v. Estate of Hiers*, 278 Ga. App. 242, 245-246 (1) (a) (2006).

However, the trial court further found that neither party's assets were fully disclosed to the other, and that Mr. Kwon's failure to fully disclose his assets to Mrs. Kwon made the agreement unenforceable. The court found that the Administrator "acknowledge[d] that the agreement does not include an accurate accounting of [Mr. Kwon's] nor [Mrs. Kwon's] assets and liabilities," and Mrs. Kwon testified that she did not ask Mr. Kwon about his financial affairs, nor did her tell her about them. Because the first factor in determining the enforceability of an antenuptial agreement is whether the agreement was obtained with a full and fair disclosure of material facts, the trial court concluded, Mr. Kwon's failure to disclose his assets to Mrs. Kwon rendered the agreement unenforceable.

On appeal, the Administrator argues that the trial court erred in finding that Mrs. Kwon was not fully apprised of Mr. Kwon's assets when she signed the agreement, and that even if she was not fully apprised, under the terms of the agreement she waived her right to the information.

1. The Administrator argues that the trial court abused its discretion in finding that he "acknowledge[s] that the agreement in dispute does not include an accurate

accounting of the Decedent's nor [Mrs. Kwon's] assets and liabilities," denying that he made such an admission. He further argues that Mrs. Kwon offered no evidence that Mr. Kwon owned any assets of which she was unaware before she signed the agreement, and that every piece of real property Mr. Kwon owned when he died was bought "well after" he married Mrs. Kwon. Absent evidence to support the trial court's findings, he argues, the court abused its discretion and must be reversed.

To the contrary, evidence in the record establishes that Mr. Kwon owned assets that were not listed in the antenuptial agreement, and Mrs. Kwon testified that Mr. Kwon never told her what he owned. The Administrator admitted in his deposition that his father owned an interest in two limited liability companies, OHI Enterprises, LLC, and FSI Enterprises, LLC, before the antenuptial agreement was signed, and those companies are not listed in the agreement. While the Administrator argues that Mrs. Kwon failed to establish that those companies held any assets when the agreement was signed, the Administrator had the burden of establishing that Mr. Kwon fully and fairly disclosed his assets to Mrs. Kwon, and if the companies had no assets when the Kwons married, the Administrator could have established that fact. See *Blige*, 283 Ga. at 68 (2) ("To satisfy the first prong of the *Scherer* test, the party seeking enforcement must show ... that there was a full and fair disclosure of the

9

assets of the parties prior to the execution of the antenuptial agreement."). In his deposition, the Administrator could not identify the ownership of the multiple financial accounts and real estate in which Mr. Kwon had an interest when he died. In fact, the Administrator could not give even a ballpark estimate of the estate's value, other than to guess that it might be insolvent.

The Administrator further argues that the agreement itself provides that the parties had disclosed their assets and liability to each other, and that the listing of Mr. Kwon's assets and liabilities was not designed to be the sole disclosure of Mr. Kwon's assets, but rather, a listing of his "separate property," which the parties agreed would remain the property of Mr. Kwon's estate. It is true that the agreement states only that the listed assets would remain Mr. Kwon's separate property. But that list constitutes some evidence that Mr. Kwon did not disclose his other assets, as does Mrs. Kwon's testimony that he did not tell her anything about his finances.

Additionally, Mrs. Kwon had no duty to investigate Mr. Kwon's assets before she signed the antenuptial agreement.

> [T]he burden is not on either party to inquire, but on each to inform, for it is only by requiring full disclosure of the amount, character, and value of the parties' respective assets that courts can ensure intelligent waiver of the statutory (and other) rights involved, and ... when a spouse has a

duty to fully and completely disclose his financial wealth, we would eviscerate and render meaningless that duty if we imposed upon the other spouse a duty to investigate.

(Citations and punctuation omitted.) *Blige*, 283 Ga. at 71 (2).

The trial court did not abuse its discretion in finding the agreement unenforceable under the first *Scherer* prong based on Mr. Kwon's failure to make a full and fair disclosure of his assets to Mrs. Kwon before they signed the antenuptial agreement. See *Blige*, 283 Ga. at 71-72 (2) (husband's failure to disclose $150,000 cash rendered agreement unenforceable); *Corbett v. Corbett*, 280 Ga. 369, 370 (628 SE2d 585) (2006) (husband's failure to disclose income rendered agreement unenforceable); *Alexander v. Alexander*, 279 Ga. 116, 117 (610 SE2d 48) (2005) (husband's failure to disclose $40,000 investment account rendered agreement unenforceable).

2. The Administrator also argues that Mrs. Kwon waived her right to challenge the adequacy of Mr. Kwon's disclosure under the terms of the agreement. The agreement states that each party had made "a substantially accurate disclosure" of all assets to the other, did not want an independent audit of the other's assets, and "specifically waives and relinquishes any right to obtain further knowledge with

regard to said holdings." The Administrator contends that a "showing of full and fair disclosure was achieved via waiver of additional financial disclosure in the document," citing *Spurlin v. Spurlin*, 289 Ga. 818, 820 (2) (716 SE2d 209) (2011).

The court in *Spurlin* did not hold that a party waives her right to a full and fair disclosure of assets based on a contract's waiver provision. If this were so, a party could avoid making any disclosure simply by including such a provision in an antenuptial agreement. Just as imposing a duty to inquire on one party would eviscerate the other party's duty of full disclosure, so would allowing a waiver provision to substitute for full disclosure eviscerate the duty to disclose. After affirming the trial court's finding that the husband's financial position was fully disclosed before the parties signed a postnuptial agreement, the Supreme Court in *Spurlin* further held that this finding "was not altered, but was further supported, by the affirmation in the agreement that each party had 'knowingly and voluntarily chosen to forego' formal discovery, investigation, and analysis of the other party's financial condition." 289 Ga. at 820. This holding does not support the proposition that a party who is not fully informed can contractually waive her right to information.

12

Further, the waiver provision here also states that it is made "with full knowledge of the holdings of the other party." Mrs. Kwon did not waive her right to obtain full and fair knowledge of Mr. Kwon's assets by signing the agreement; she only waived her right to obtain "further knowledge" of the holdings she already knew about. Accordingly, we find no merit in this enumeration.

*Judgment affirmed. Ray and McMillian, JJ., concur*.