**THIRD DIVISION**
**DOYLE, P. J.,**
**MARKLE and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 5, 2026**

# In the Court of Appeals of Georgia

A25A2209. CRANE v. CRANE.

PADGETT, Judge.

James Crane ("Husband") and Kimberly Crane ("Wife") were married in 2005. In 2024, Husband filed for divorce and then moved to enforce the parties' postnuptial agreement. The trial court granted Husband's motion prior to entering the divorce decree. Wife filed an application for an interlocutory appeal from that order, which this Court granted. On appeal, Wife argues that the trial court erred by enforcing the postnuptial agreement because there was not a full and fair disclosure of material facts at the time of the postnuptial agreement. For the following reasons, we agree and reverse.

This Court evaluates a trial court's ruling on whether a postnuptial agreement is enforceable under an abuse of discretion standard. Under this standard, "we review the trial court's legal holdings de novo, and we uphold the trial court's factual findings as long as they are not clearly erroneous, which means there is some evidence in the record to support them." *Murray v. Murray*, 299 Ga. 703, 705 (791 SE2d 816) (2016) (citation modified). Moreover, "[a]lthough this standard of review is deferential, it is not toothless. An abuse of discretion occurs where a ruling is unsupported by any evidence of record or where that ruling misstates or misapplies the relevant law." *Arlotta v. Arlotta*, 372 Ga. App. 828, 830–31 (906 SE2d 912) (2024) (citation modified).

So viewed, the record shows that Husband and Wife entered into a prenuptial agreement in 2005. In 2014, the couple entered into a postnuptial agreement (the "Agreement") that would govern the distribution of their assets in the event of a divorce. In pertinent part, the Agreement provided that each party would retain their respective interests in their joint marital residence, with the Wife having the right of first refusal to buy the home. The Agreement further contemplated that each spouse would retain his and her respective vehicles and financial accounts, including

retirement and stock accounts. With respect to Husband's future inheritance from his mother, the Agreement provided that he would pay $50,000 of those funds to Wife and the remainder would be his separate property. Under the Agreement, neither party would pay spousal support to the other. It is undisputed that the Agreement did not include a financial disclosure form or a listing of the Husband's and Wife's separate property.

Husband filed a complaint for divorce in 2024. Wife filed an answer and counterclaimed for divorce and other relief. Husband then filed a motion to enforce the Agreement. In his motion, Husband asserted that the parties entered into the Agreement with full knowledge of each other's assets, income, and financial information, and that he should be awarded his separate and premarital property. Wife responded and argued, in pertinent part, that she was unaware of the value of his assets before executing the agreement because Husband maintained exclusive control over the family's finances.

The trial court conducted a hearing at which Husband, Wife, the attorney who drafted the Agreement, and the notary who signed the document testified.

The attorney testified that although he prepared the Agreement, there was no financial disclosure prepared to accompany that document. After hearing this testimony, the trial court cautioned that it was "very good practice" to attach a financial statement to such agreements.

Wife testified that although she had a college education and maintained her nursing license throughout the marriage, she had not worked since 2007 because she was a stay-at-home mother. She further testified that Husband took care of the bills and family finances. The record revealed Wife did not know much about the details of the family finances, denied knowing about Husband's retirement account balance or log-in information, the value of assets he owned, and did not have independent access to their online accounts. Wife testified that the parties operated out of a joint checking account, and that she had access to a credit and debit card throughout the marriage and did not have to ask Husband for funds. Wife explained that when the family decided to shop for a new house prior to the divorce, Husband had discussed their budget but did not elaborate on their finances except to state that they wanted to "break even" by selling their old house. Wife further testified that she never reviewed or signed the joint tax returns prepared by Husband during their marriage.

She also testified that Husband invested in a textbook business without consulting her, and that she was unaware of the amount of money that he invested or how much he made from that investment. She further testified that when she received the check from Husband's inheritance, she opened a money market account in her own name and deposited the check.

Husband testified that he works as an executive director and producer with a media company. He testified that he wanted the postnuptial agreement so that the couple's retirement accounts and his inheritance would remain separate because it was important to him that Wife return to work after the children were born. Husband testified that he had Fidelity accounts, including a retirement account, through his employer and that Wife did not have access to those accounts, although he claimed that they discussed the contents at some point. Specifically, Husband testified that when the parties signed the Agreement, that Wife was aware of the account balance of Husband's 401(k). Husband further claimed that Wife had access to the joint bank accounts through his log-in information. He testified that he prepared their joint income tax returns via Turbo Tax and then allow Wife to review them before filing electronically. He testified that sometimes Wife would have questions about the taxes

5

and sometimes she would not. Husband admitted that he did not have independent proof that he shared his annual income or the value of his separate assets with Wife at the time the Agreement was signed, but testified that they discussed their financial condition at that time.

At the conclusion of the hearing, the trial court announced its findings and granted Husband's motion to enforce the postnuptial agreement. The trial court concluded that the postnuptial agreement was "not a result of fraud, duress, mistake or misrepresentation" and it was not unconscionable. The trial court later entered a written order consistent with its oral pronouncement. We granted Wife's application for interlocutory review of that order.

On appeal, Wife argues that the trial court erred by finding that there had been a "full and fair disclosure of material facts" at the time the Agreement was executed and thus, it is invalid. In deciding whether a postnuptial agreement should be enforced, the trial court "essentially sits in equity" and has the discretion to "approve the agreement in whole or in part, or refuse to approve it as a whole." *Alexander v. Alexander*, 279 Ga. 116, 117–18 (610 SE2d 48) (2005) (citation modified). Our Supreme Court has held that the same three-part test that was first made applicable

6

to antenuptial agreements is equally applicable to postnuptial agreements. *Curry v. Curry*, 260 Ga. 302, 303(2) (392 SE2d 879) (1990); *Spurlin v. Spurlin*, 289 Ga. 818, 819(2) (716 SE2d 209) (2011). When determining whether a postnuptial agreement is enforceable, the trial court must determine:

> (1) [W]as the agreement obtained through fraud, duress or mistake, or through misrepresentation or nondisclosure of material facts? (2) [I]s the agreement unconscionable? (3) Have the facts and circumstances changed since the agreement was executed, so as to make its enforcement unfair and unreasonable?

*Alexander*, 279 Ga. at 117 (quoting *Scherer v. Scherer*, 249 Ga. 635, 641(3) (292 SE2d 662) (1982)). "Whether an agreement is enforceable in light of these criteria is a decision made in the trial court's sound discretion." Id. (citation omitted). However, as noted previously, we review the trial court's legal holdings de novo. *Murray*, 299 Ga. at 705.

The first prong of this test, and the only prong at issue here,[1] requires the party seeking enforcement to show that there was both a "full and fair disclosure of the assets of the parties prior to the execution" of the agreement, and that "the party

---

[1] Neither party challenges the second or third prong of this test.

opposing enforcement entered into the agreement freely, voluntarily, and with full understanding of its terms after being offered the opportunity to consult with independent counsel."[2] *Brantley v. Brantley*, 345 Ga. App. 644, 646–47(1) (814 SE2d 787) (2018) (citation modified). Georgia law imposes an "affirmative duty of pre-execution disclosure on parties" seeking to enforce such an agreement. Id. at 647(1) (citation modified). Notably,

> the burden is not on either party to inquire, but on each to inform, for it is only by requiring full disclosure of the amount, character, and value of the parties' respective assets that courts can ensure intelligent waiver of the statutory (and other) rights involved, and when a spouse has a duty to fully and completely disclose his financial wealth, we would eviscerate and render meaningless that duty if we imposed upon the other spouse a duty to investigate.

*Kwon v. Kwon*, 333 Ga. App. 130, 135(1) (775 SE2d 611) (2015) (citation modified). To this point, there was no express financial disclosure made and included with the

---

[2] Husband testified that he suggested that Wife seek independent legal advice and offered to have the cost of that consultation be paid from marital funds. Wife denied that she ever had a conversation with Husband relating to her seeking independent legal counsel.

Agreement,[3] and Husband testified that he had no independent evidence, other than his testimony, that he identified his assets or income to Wife prior to the Agreement being signed.

Here, the trial court found that the Agreement "was not the result of fraud, duress, mistake, or misrepresentation." In doing so, the trial court made findings that the parties were married for nine years prior to the Agreement being executed, Wife "trusted" Husband to "take care of the finances," that she had "access" and login information to the parties' joint bank accounts and that she was "allowed" to use the debit card out of the joint accounts freely. The trial court acknowledged that Wife testified that she was aware that Husband earned a good salary, Husband did not put any set spending limit on Wife, and their children were able to freely participate in extracurricular activities.

From those factual findings, the trial court determined there was a sufficient disclosure to meet the requirements of *Scherer*. Those findings did not include any

---

[3] Although attaching financial statements to the postnuptial agreement that show "both parties' assets, liabilities, and income . . . is the most effective method of satisfying the statutory disclosure obligation in most circumstances[,]" it is not required. *Lawrence v. Lawrence*, 286 Ga. 309, 313(3) (687 SE2d 421) (2009) (citation modified).

reference to whether Husband made a full disclosure of *his* assets and income. Instead, the trial court found that Wife was aware their family was financially comfortable and that she had access to documents and accounts from which she could have learned about the details of their financial picture. Specifically, the trial court noted that Wife had access to joint account statements, tax returns and other documentation from which she could have gleaned relevant financial information. However, in the context of a postnuptial agreement, the burden is on the Husband to affirmatively disclose all material facts in order to have the Agreement enforced. The burden does not fall to Wife to accumulate information from available sources. See *Kwon*, 333 Ga. App. at 135 (when examining an antenuptial agreement, the burden is not on either party to inquire but on each to inform); *Blige v. Blige*, 283 Ga. 65, 71(2) (656 SE2d 822) (2008) ("[T]he 'duty of inquiry' envisioned by [the husband] is incompatible with the duty of full and fair disclosure recognized by *Scherer* and its progeny."); *Dodson v. Dodson*, 298 Ga. 117, 119 (779 SE2d 638) (2015) (the spouse seeking enforcement must *show* full and fair disclosure of his or her material assets, and in the absence of such full and fair disclosure, the other spouse does not have a general duty to investigate (emphasis supplied)). This duty to disclose is particularly significant when one party is waiving

10

his or her right to alimony. *Corbett v. Corbett*, 280 Ga. 369, 370(1) (628 SE2d 585) (2006). "It is also undisputed that the agreement fails to disclose Husband's income and that Wife waived her right to seek alimony as part of the agreement. Husband's income, therefore, was material to the antenuptial agreement and would have been a critical factor in Wife's decision to waive alimony." Id.

Husband has pointed to the holding in *Mallen v. Mallen*, 280 Ga. 43 (622 SE2d 812) (2005), as being important to the determination of this case. However, in several material respects, *Mallen* is factually and legally distinguishable from the present case. In *Mallen*, the parties entered into a antenuptial agreement which included financial disclosure forms wherein each party set out their respective assets and liabilities. Neither financial disclosure form included any reference to income. *Mallen*, 280 Ga. at 46(1)(c). Additionally, the agreement there provided that the wife would receive alimony adjusted for the number of years of marriage. Id. at 43. In affirming the trial court's determination that the agreement was enforceable, a divided Supreme Court held

> although the financial statement did not include income, it did reveal Husband to be a wealthy individual with significant income-producing assets, including an 80% ownership share of a business bearing his name.

> Wife had lived with Husband for four years and was aware from the standard of living they enjoyed that he received significant income from his business and other sources. Under those circumstances and in light of the authority cited above, Wife cannot be said to have demonstrated that the absence from Husband's financial statement of precise income data constituted the nondisclosure of material facts which would render the prenuptial agreement unenforceable.

*Mallen*, 280 Ga. at 47(1)(c). In the present case, no financial disclosures were made a part of the Agreement. Within the Agreement, Wife waived her right to seek alimony. Both of these differences distinguish the facts of *Mallen* from the facts here. And those different facts are material to the issue on appeal. As our Supreme Court noted in later decisions, the decision in *Mallen* was based upon "the unique circumstances of that case." *Blige*, 283 Ga. at 71(2). "Of course, *Mallen* did not hold that cohabitation before marriage always, or even usually, renders nondisclosure of a party's income 'immaterial' as a matter of law for purposes of the first prong of the *Scherer* test. To the contrary, the majority opinion emphasized the unusual facts of the case." Id. n.21 (citation modified). We thus find that the holding in *Mallen* does not control the outcome of this case.

In another case from our Supreme Court, the wife appealed from a trial court's finding that the postnuptial agreement was enforceable, alleging that there was no financial disclosure made by the husband. *Spurlin*, 289 Ga. at 819(2) . In affirming the trial court, the Court noted that the wife keyed all of the family's financial information into a computer, she handled all of the paychecks received by her husband and paid all the family bills, thereby giving her "substantial knowledge of his financial status." Id. In contrast, the undisputed evidence in this case shows that Wife had no involvement with paying family bills. Although Husband testified that Wife had access to information about their collective finances, both parties acknowledged that Husband handled all of the family financial matters. Stated another way, in *Spurlin*, the wife had actual knowledge of the family financial situation. In this case, Wife may have had access to some financial information, but she had no actual knowledge of their financial situation, or more specifically, the "amount, character, and value of the parties' respective assets." See *Kwon*, 333 Ga. App. at 135(1).

As noted above, the trial court is entitled to significant deference in deciding whether a postnuptial agreement is enforceable. *Blige*, 283 Ga. at 68 (familiar abuse of discretion standard applies). However, as *Scherer* and its progeny make clear, the

first step in the trial court's legal evaluation of the enforceability of a postnuptial agreement is a determination of whether the agreement was obtained following affirmative, full and fair disclosure of material facts. See *Scherer*, 249 Ga. at 641(3). And further, the burden is on the proponent to demonstrate that he fulfilled that affirmative duty *and* that the opponent entered into the agreement, not just freely and voluntarily, but with a "full understanding of its terms." See *Lawrence v. Lawrence*, 286 Ga. 309, 313(4) (687 SE2d 421) (2009) (citation modified). We find that by relying on the Wife's ability to access joint accounts, joint tax returns, and joint mortgage documents, and her general awareness of other investments the Husband made and the family's standard of living, the trial court erred in relieving the Husband of both his affirmative duty to make full and fair disclosure of material facts and his burden to demonstrate his fulfillment of that duty. Moreover, where the record is silent on the value of the Husband's annual income, his 401(k), and the profits, if any, from his investment in a textbook business, we find the Husband could not carry his burden to show that the Wife entered into the Agreement, in which she waived her right to seek alimony, with a full understanding of its terms. Based upon the foregoing, we conclude that there was not a full and fair disclosure of material facts prior to the parties signing

14

the Agreement. Thus, we find that the trial court abused its discretion in granting Husband's motion to enforce the Agreement and we reverse.

*Judgment reversed. Markle, J., concurs. Doyle, P. J., dissents.*

A25A2209. CRANE v. CRANE.

DOYLE, Presiding Judge, dissenting.

As set forth by the majority, we owe deference to the trial court's ruling on the enforceability of the postnuptial agreement. Because the record supports the trial court's determination that the postnuptial agreement was entered into after a full and fair disclosure of the parties' assets prior to its execution, I would affirm the trial court and thus respectfully dissent.

The Cranes were married for nine years before they executed the postnuptial agreement at issue, and 11 years following its execution.[1] For the duration of the marriage, they shared joint bank accounts, to which the wife had access via her debit

---

[1] The husband and wife also executed a prenuptial agreement in 2005, which is not at issue in this case.

card and the husband's login information. They also regularly discussed their financial situation and made joint decisions about their mortgage. The husband testified that they "discussed everything" about their finances and that the wife would look at their bank records to discuss expenditures with the husband. The husband also prepared joint tax returns and provided them to the wife for review before filing. The wife participated in discussions with the husband about the budget for the purchase of a new home and was present at the closing, signing all the relevant documents. With respect to the only accounts to which the wife did not have direct access, the husband testified that they "had full discussions on that, and [the wife] knew what was in the 401(k) when she signed [the postnuptial agreement]." The husband specifically testified that he told the wife "how much was in the 401(k)."

Although the wife claimed she did not know the value of the 401(k) and did not recall exactly how much the husband earned on an investment in his brother's textbook company, it was within the trial court's discretion to credit the husband's testimony that he discussed everything about his finances with the wife and informed her of the amounts in the investment accounts.[2] This supports the trial court's

---

[2] The trial court found that the only financial assets in dispute were the husband's 401(k) retirement account and a claim for alimony. Nonetheless, after

2

conclusion that the material facts of the husband's financial situation were fully and fairly disclosed at the time the postnuptial agreement was entered into.[3] See *Smith v. Carter*, 305 Ga. App. 479, 480(1) (699 SE2d 796) (2010) ("[T]he testimony of a single witness is generally sufficient to establish a fact[.]").

---

considering the exhibits and testimony of the parties and other witnesses, the trial court found in favor of upholding the agreement.

[3] While the preferred course is to attach all financial statements to a postnuptial agreement, the Supreme Court of Georgia has held that this is not a prerequisite to its enforceability. See *Lawrence v. Lawrence*, 286 Ga. 309, 313(3) (687 SE2d 421) (2009). Thus, I see no need in requiring, as the majority implies, that the husband provide evidence in addition to his testimony to this effect by way of emails or other corroborating documents. Neither do I see the significance of whether the associated financial statements are placed into the divorce record after the fact. Whether the husband later demonstrated the value of his income, 401(k), and the profits, if any, from his textbook business has no bearing on whether he disclosed this information to the wife before they entered into the postnuptial agreement.